UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:

GREGORY HOUSTON,   Case No. 11-60934
  Chapter 7
 Debtor.  Hon. Marci B. McIvor
_____/

## OPINION REGARDING LAKE TRUST CREDIT UNION'S MOTION FOR RELIEF FROM AUTOMATIC STAY TO ALLOW SETOFF PURSUANT TO 11 U.S.C. § 553(a)

On September 8, 2011, Lake Trust Credit Union (f/k/a Detroit Edison Credit Union) filed a Motion for Relief from the Automatic Stay to Allow Setoff Pursuant to 11 U.S.C. § 553(a). For the reasons set forth below, this Court denies the Credit Union's Motion subject to the Credit Union's right to file an affidavit regarding the parties' net contributions to the Survivorship Account.

I.

FACTUAL BACKGROUND

Kathryn Houston-Nedd opened an account at Lake Trust Credit Union sometime prior to or in June 1993. The form used to open the account is titled "Survivorship Account". Ms. Houston-Nedd states in her Affidavit that she opened the "Survivorship Account" with the intention that her son, Gregory A. Houston, would receive any funds remaining in this account upon her death. The top portion of the form is signed only by Kathryn Houston-Nedd. The bottom portion of the Survivorship Account form is titled "Application – Multiple Name Share Deposit Account With Survivorship". It is signed by

Kathryn Houston-Nedd as the "member" and by Gregory Houston as the "joint member."

Below the signature lines, the Application contains the following statements:

> The Aforementioned are hereby made parties to this share-deposit account and on proper withdrawal demand, the Credit Union will pay all sums due on account of payment on share-deposits and any accumulations or benefits added thereof, less any setoff allowed by law to any one or more of said parties. The survivor or survivors from time to time of the parties shall be the only persons who shall be entitled to demand payments of balances in the account. The interest of any of the parties in this account, any requirements of this signature incident to a withdrawal demand, his status as a party to this share-deposit account contract and his right to make withdrawals as aforesaid cease upon his death if one or more of the other parties survives such death.
>
> Furthermore, the master member, referenced to as "Member", has the right to add, delete or otherwise change, at any time, the names of the persons designated as joint members, without notification or consent of said joint members.

The Survivorship Account application signed by Ms. Houston-Nedd was not dated. However, the back of the document indicates that the information was "Rev. To Change Joint" and verified by the Credit Union on June 24, 1993 and subsequently approved in July of 1993.

In her sworn Affidavit, Kathryn Houston-Nedd states that she is the only person who has ever placed any monies in this account or who has withdrawn monies from this account. She further states that Gregory A. Houston neither deposited nor withdrew any amounts from this account. In addition, Gregory A. Houston's name never appeared on any of the account statements for the Survivorship Account and all the statements for the Survivorship Account were addressed and mailed to Kathryn Houston-Nedd only.

On November 29, 1999, Gregory Houston applied to become a Member of the Credit Union. He was assigned an account number ending in the digits 5228. Gregory Houston appears to have established both a checking account and a savings account with the Credit Union. On November 19, 2000, Gregory Houston applied for a Visa Classic card, seeking a credit limit of $1,500. Subsequently, Gregory Houston was approved for this Visa card. On September 22, 2005, Gregory Houston applied for a Platinum Preferred Visa through the Credit Union, seeking a credit limit of $50,000. The Credit Union approved Gregory Houston's Platinum Preferred Visa application on September 30, 2005. The Visa contracts between Gregory Houston and the Credit Union state, in part, "Your account is secured by all shares you have in any individual or joint account with the Credit Union."

On August 2, 2011, Gregory Houston ("Debtor") filed a Chapter 7 bankruptcy. At the time of his filing, Debtor had an outstanding obligation to the Credit Union for the two Visa Accounts in the amount of $42,087.67.

On September 8, 2011, the Credit Union filed a Motion for Relief from Stay to Allow Setoff Pursuant to 11 U.S.C. § 553(a). The Credit Union seeks to set-off the amount it is owed by Debtor against the funds held in the Survivorship Account established by Kathryn Houston-Nedd. The Credit Union argues that the statutes governing credit unions give it the right to effectuate such a set-off. The Credit Union relies on Mich. Comp. Laws 490.64 (which provides a right to set-off against multiple party accounts); and Mich. Comp. Laws 490.361 (which provides a lien against accounts held by members of the credit union). Specifically, the Credit Union argues: (1) the Credit Union has a lien on the Survivorship Account and may enforce its lien by

3

setting-off the funds in that account against the debt owed to it by Debtor pursuant to Mich. Comp. Laws § 490.361(4); and (2) the Credit Union is entitled to set-off against the Survivorship Account because (a) the presumptions set forth in Mich. Comp. Laws § 490.52 do not apply when the Credit Union is the creditor seeking payment of a debt and (b) Mich. Comp. Laws § 490.64 exempts the Credit Union from the presumptions regarding ownership.

II.

ANALYSIS

Section 553 of the Bankruptcy Code preserves the right to set-off as a widely recognized common law right that "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A." *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995). Section 553 provides, in part:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of this case[.]

In other words, the right to set-off is preserved where: (1) there are mutual, pre-petition obligations owing between the debtor and the creditor; and (2) a right to set-off the obligations exists under non-bankruptcy law. *In re Holder*, 182 B.R. 770, 775 (Bankr. M.D.Tenn. 1995). "State law governs the substance of a set off claim under § 553." *In re New Haven Foundry, Inc.*, 285 B.R. 646, 648 (Bankr. E.D.Mich. 2002) (citation omitted).

4

Because the right to set-off is based in state law, this Court must discuss the state statutes relating to set-off and credit unions. Mich. Comp. Laws § 490.51 defines the types of accounts which may be held at a credit union. Mich. Comp. Laws § 490.51 states, in part:

**490.51. Definitions**

Sec. 1. As used in this act:

(a) "Account" means a contract of deposit of funds between depositors and credit unions, and includes deposit accounts, members or share accounts and other like arrangements whether or not they may be characterized as refundable capital investments.

\* \* \*

(d) "Multiple-party account" means an account in the names of 2 or more persons, 1 or more or all of whom may make withdrawals, or an account in the name of 1 or more parties as trustee for 1 or more beneficiaries even though no mention is made of a right of withdrawal by a beneficiary. . . . At least 1 party to a multiple-party account shall be a member of the credit union in which the account is established.

\* \* \*

Based on the definitions of "account" and "multiple-party account", it is clear that a multiple-party account encompasses accounts in which multiple members are parties to the accounts, accounts in which there are multiple parties but only one party is a member, deposit accounts, survivorship accounts, and share accounts.

A. <u>Mich. Comp. Laws § 490.361</u>

The Credit Union's first argument is that it has a lien on the Survivorship Account opened by Kathryn Houston-Nedd and may enforce its lien by setting off the funds in that account against the debt owed to it by Debtor. Mich. Comp. Laws § 490.361(4)

5

provides, in part,

> **490.361. Composition of capital; charging of entrance fee; use of secondary capital other than capital stock; liability of member for acts, debts, or obligations of credit union; lien of credit union on shares or accounts of members**
>
> \* \* \*
>
> (4) Except as provided in this subsection or where prohibited by applicable state or federal law or otherwise agreed by contract, a domestic credit union has a lien on any share of a member, or any deposit account from which a member may withdraw for his or her own benefit without the consent of another person, for any obligation owed to the domestic credit union by that member or for any loan cosigned or guaranteed by that member. . . A domestic credit union may refuse to allow a withdrawal from any account on which it has a lien if the member is delinquent in any outstanding obligation to the domestic credit union at the time of the withdrawal.

Thus, by its express terms, Mich. Comp. Laws § 490.361(4) provides a credit union with a lien under two scenarios, both of which apply when a member is indebted to the credit union. The statute provides a credit union with a lien (1) "on any share of a member" or (2) "any deposit account from which a member may withdraw for his or her own benefit without consent of another person."

Debtor was not a member of the Credit Union at the time the Survivorship Account was formed. Instead, pursuant to Mich. Comp. Laws § 490.51, Debtor was a "party" to a multiple-party account. Until Debtor became a member, the Credit Union had a lien only against Kathryn Houston-Nedd. However, once Debtor became a member of the Credit Union, the statute provides that the Credit Union has a lien on "any deposit account from which a member may withdraw for his or her own benefit without the consent of another person. . . " Mich. Comp. Laws § 490.361(4). Assuming

6

Debtor had an ability to withdraw funds from the Survivorship Account,[1] the Credit Union's lien attached to the Survivorship Account once Debtor became a member of the Credit Union.

While this Court finds that the Credit Union has a lien against the Survivorship Account, that finding does not automatically lead to the conclusion that the Credit Union has a right to set-off all of the funds in the Survivorship Account. The only enforcement right provided to the Credit Union in Mich. Comp. Laws § 490.361(4) is the right to "refuse to allow a withdrawal from any account on which it has a lien if the member is delinquent in any outstanding obligation to the domestic credit union at the time of the withdrawal." Mich. Comp. Laws § 490.361(4). In this case, the Credit Union is not seeking to block the withdrawal of funds from this account; it is seeking to withdraw the funds itself. This statute does not address any rights of the Credit Union to make such a withdrawal.

In order to determine what rights a credit union might have to enforce its lien, the Court must look at the nature of the account against which a credit union seeks to enforce its lien. In this case, the account against which the Credit Union seeks to enforce the lien is a multiple-party deposit account in which Kathryn Houston-Nedd is the member and Debtor is a party to the account. This type of account is a multiple-party account governed by Mich. Comp. Laws § 490.51. Thus, this Court must look to the statutes which govern multiple-party accounts to determine the respective rights of

---

[1] Kathryn Houston-Nedd's affidavit states that Debtor did not withdraw funds from the Survivorship Account. The affidavit does not say that Debtor *could not* withdraw funds. The Credit Union has presented no conclusive evidence that Debtor had a right of withdrawal although the Application appears to suggest that Debtor had that right.

7

the Credit Union and the parties to the multiple-party account.

This Court's conclusion, that the existence of a lien is insufficient to permit a credit union to seize the entire balance in a multiple-party account, is contrary to a bench opinion issued in *In re Rohde,* Case No. 09-48829 (Bankr. E.D. Mich.) (Rhodes, J.).[2] In the *Rohde* case, the debtor was a member of the credit union and a party to a multiple-party account. The credit union sought to enforce its lien against the multiple-party account to satisfy an obligation of the debtor to the credit union, even though the evidence demonstrated that the funds in the account did not belong to the debtor. The *Rodhe* court ruled in favor of the credit union, holding that the existence of the lien was sufficient to require a turnover of funds to the credit union.

This Court disagrees with that conclusion for the following reason. The Credit Union's lien remedy is found in a subsection of a statute titled "Composition of capital"[3]. The clear purpose of giving a credit union a lien right is to protect the capital of the credit union and to prevent a credit union member from withdrawing funds when the member has an obligation to the credit union. The question of what law governs when a

---

[2]Bench opinions have no precedential or binding effect. However, the Credit Union's brief cited scant authority and this Court finds it necessary to address the cited authority.

[3]The full title of Mich. Comp. Laws § 490.361 reads as follows:

**490.361. Composition of capital; charging of entrance fee; use of secondary capital other than capital stock; liability of member for acts, debts, or obligations of credit union; lien of credit union on shares or accounts of members**

8

*credit union* seeks to set-off an obligation owed by a member against funds in a multiple-party account is not answered by Mich. Comp. Laws § 490.361. To determine the respective rights of the parties to a multiple-party account and a credit union, the Court must rely on the statutes governing multiple-party accounts, those being Mich. Comp. Laws §§ 490.53 - 490.57.

B.  Mich. Comp. Laws §§ 490.51 to 490.64

The definition of multiple-party account is set forth in Mich. Comp. Laws § 490.51, *supra*. The following section, Mich. Comp. Laws § 490.52, governs the respective rights of members and credit unions. Mich. Comp. Laws § 490.52 states:

> **490.52. Presumptions; liability of credit unions**
>
> Sec. 2. The presumptions created by sections 3 to 7 [FN1] concerning beneficial ownership as between parties, or as between parties and beneficiaries, of multiple-party accounts are relevant only to controversies between these persons or their creditors and other successors, and shall have no bearing on the rights of withdrawal of such persons as determined by the terms of account contracts. The provisions of sections 11 to 16 govern the liability of credit unions who make payments pursuant thereto, and their set-off rights.[4]
>
> [FN1] M.C.L.A. §§ 490.53 to 490.57.

Mich. Comp. Laws § 490.52 addresses three subjects: (1) presumptions regarding ownership of multiple-party accounts; (2) credit unions' liability to their members; and (3)

---

[4]This statute is poorly drafted. The language, "sections 3 to 7", refers to Mich. Comp. Laws §§ 490.53 to 490.57, which is confirmed in a footnote found within the statute. It appears that the language "sections 11 to 16" refers to Mich. Comp. Laws §§ 490.61 to 490.64, even though the statute does not explicitly define those sections, as it did with the previous sections. In addition, section 15 was repealed and section 16 appears never to have existed.

9

credit unions' set-off rights.

Mich. Comp. Laws §§ 490.53 to 490.57 ("sections 3 to 7") set forth the presumptions of ownership which govern multiple-party accounts. The relevant statutes state:

> **490.53. Presumptions; demand accounts, ownership in proportion to net contributions**
>
> Sec. 3. During the lifetime of all parties, a multiple-party account which provides that sums on deposit or in shares may be paid on the demand of either of 2 or more parties is presumed to belong to the parties in proportion to the net contributions by each to the sums on deposit.
>
> **490.54. Presumptions; ownership in equal undivided interests**
>
> Sec. 4. In the absence of satisfactory proof of the net contributions, those who are parties from time to time shall be presumed to own a multiple-party account in equal undivided interests.

The provisions of Mich. Comp. Laws §§ 490.61 to 490.64 ("sections 11 to 16") govern the liability of credit unions and the right of credit unions to set-off a liability owed to them. The section relevant to the dispute between the parties in the instant case is Mich. Comp. Laws § 490.64, which states:

> **490.64. Set-off**
>
> Sec. 14. Without qualifying any other statutory right to set-off or lien and subject to any contractual provision, when a party to a multiple-party account is indebted to a credit union, the credit union has a right to set-off against the entire amount of the account.

The Credit Union argues that it is entitled to set-off the amount owed to it by the Debtor against the Survivorship Account for two reasons. First, the Credit Union argues that the presumptions regarding the ownership of an account, as set forth in Mich. Comp. Laws § 490.52, do not apply when the Credit Union is the creditor seeking

10

payment of a debt because Mich. Comp. Laws § 490.52 references controversies "between parties, or as between parties and beneficiaries, of multiple-party accounts . . ."

The Court disagrees with the Credit Union's interpretation of Mich. Comp. Laws § 490.52. "It is a fundamental rule of statutory construction that where the language of a statute is clear and unambiguous, no judicial interpretation is warranted." *Victorson v. Dept. of Treasury*, 482 N.W.2d 685, 687-688 (Mich. 1992). However, judicial construction is permitted when the language of a statue is susceptible to more than one interpretation. *Id.* at 688. When the wording of a statute is ambiguous, courts must seek to discern the intent of the legislature in light of the purpose sought to be accomplished. *Dept. of Treasury v. Comerica Bank*, 506 N.W.2d 283, 285 (Mich. Ct. App. 1993) *citing Energetics, Ltd. V. Whitmill*, 497 N.W.2d 497 (1993).

As already noted, Mich. Comp. Laws § 490.52 is not a model of clarity. In titling the statute "Presumptions; liability of credit unions," this Court assumes that the legislature intended to set forth the presumptions regarding ownership of multiple-party accounts, and the liability (or lack thereof) of credit unions to their members. This Court will discuss the relevant state statutes with that intention in mind.

The first sentence of Mich. Comp. Laws § 490.52 states, in part:

> [t]he presumptions created by sections 3 to 7 . . . concerning beneficial
> ownership as between parties . . . of multiple-party accounts are relevant
> only to controversies between these persons <u>or their creditors</u> . . . and
> shall have no bearing on the rights of withdrawal of such persons as
> determined by the terms of account contracts. (emphasis added).

The statute distinguishes between when the presumptions of ownership apply and when they do not apply. The first clause of the sentence provides that the presumptions apply

11

to controversies between parties or between parties and creditors.  The last clause of the sentence provides that the presumptions set forth in Mich. Comp. Laws §§ 490.53-490.57 do not apply to prevent a party from withdrawing funds.  In other words, if the account contract allows a party to withdraw 100% of the funds in an account, the party may withdraw the funds without the credit union having to ascertain the net contributions to the accounts.  In the instant case, the first clause of Mich. Comp. Laws § 490.52 applies.  The Credit Union is a creditor, and the matter before the Court is a controversy between a creditor and the parties to a multiple-party account regarding ownership of the account.  Accordingly, this Court finds that the presumptions set forth in Mich. Comp. Laws § 490.52 apply to the Credit Union.

The Credit Union's second argument is that the language of Mich. Comp. Laws § 490.64 exempts the Credit Union from the presumptions regarding ownership.  The Credit Union argues that it has the right to set-off the entire balance in a multiple-party account against an obligation owed by any one of the parties to the account, and the parties have no right to offer proof of ownership as a defense to the set-off. The Credit Union relies on the following language to support its position: "the credit union has a right to set-off against the entire amount of the account." Mich. Comp. Laws § 490.64.

Again, this Court disagrees with the conclusion drawn by the Credit Union.  The language found in Mich. Comp. Laws § 490.64 merely codifies the Credit Union's right of set-off.  The Credit Union has the right to set-off the entire balance in the multiple-party account.  However, that right is then subject to the parties' rights to prove actual ownership of the funds in the account, based on their net contributions to the account.

This Court's conclusion, that the Credit Union's set-off rights against a multiple-

party account are subject to the presumption of ownership set forth in Mich. Comp. Laws §§ 490.353-57, is contrary to a bench opinion and a published opinion from this district. *See In re Pamela M. Crawford*, Case No. 09-58228 (Bankr. E.D. Mich.) (Shapero, J.); *In re Hess*, 456 B.R. 309 (Bankr. E.D. Mich. 2011).

In the *Crawford* case, the debtor was the joint owner on two accounts with her sons. The debtor argued that each account belonged to her sons and that her sons were the only ones to deposit or withdraw any money from the accounts. The credit union argued that it was entitled to set-off the funds in the subject account under Mich. Comp. Laws § 490.64. The debtor raised the presumptions (i.e. ownership presumed to belong to parties in proportion to their net contributions) as a defense to the credit union's set-off rights. The *Crawford* court concluded that the presumptions did not apply. *Crawford*, pp. 5-6.

This Court disagrees with the *Crawford* decision. The *Crawford* court seems to hold that the presumptions only apply if the credit union is claiming to have an ownership interest in the account and if there is a dispute about the size of that ownership interest. This Court cannot conceive of such a controversy. As discussed in detail above, the only logical way to interpret Mich. Comp. Laws § 490.52 is to hold that the presumption of ownership applies to controversies between parties to a multiple-party account or to controversies between a party to a multiple-party account and a creditor seeking to attach a party's interest in the account.

In addition, the *Crawford* case found that "M.C.L. § 490.64, which by reason of being specific, governs the issue of set-off. . . and precludes [the court] from engaging in a factual inquiry as to whose monies went into the accounts in question . . ."

13

*Crawford*, pp. 5-6. This Court disagrees with that conclusion, finding that Mich. Comp. Laws § 490.64 is no more specific than the sections that concern the presumptions, Mich. Comp. Laws §§ 490.53 to 490.57. In addition, this Court finds that Mich. Comp. Laws § 490.64 merely codifies a credit union's right to set-off the entire amount in the account; it does not grant the credit union any extra privileges with respect to set-off. In the case of a single party account, there would be no question that a credit union would be entitled to the entire amount because the presumptions only apply to multiple-party accounts. With respect to multiple-party accounts, the presumptions do apply, and set-off is limited to a party's net contributions to the account.

The other decision which concludes that a party to a multiple-party account is not entitled to assert the presumptions of ownership as a defense to a set-off is *In re Hess*, 456 B.R. 309 (Bankr. E.D. Mich. 2011). In *Hess*, Mary Hess (the debtor's mother), a member of credit union, added the debtor and his sister to her "account". At the time, Mary Hess had three separate accounts: a savings account, a checking account, and a money market account. Based on the documents presented to the court, the *Hess* court found that the debtor and his sister were added as parties to their mother's checking account only. The *Hess* court found that the checking account was a multiple-party account (those parties being the debtor, the debtor's sister and the debtor's mother) and then held that the credit union could set-off sums owing to the credit union by the debtor against that one account. The *Hess* court did not allow set-off against the debtor's mother's savings account or money market account on the grounds that those were not multiple-party accounts. The *Hess* court stated:

> In light of the Court's determination that the only multiple-party account

14

> established under the Application was limited to the Debtor's mother's checking account, it is not necessary for the Court to address the Debtor's second argument about the presumptions that exist under Mich. Comp. Laws § 490.52 to § 490.58.

*In re Hess*, 456 B.R. at 318.

The *Hess* court provides no explanation for its conclusion that it did not need to consider the presumptions set forth in Mich. Comp. Laws §§ 490.52 to 490.57 and this Court declines to follow the *Hess* court's ruling.

This Court's conclusion that a credit union's set-off rights are subject to the parties' right to establish ownership of the account, is supported by several cases from other jurisdictions. *See, In re Cullen*, 329 B.R. 52, 54 (Bankr. N.D. Iowa, 2005)(Under Iowa law, "the presumption that joint tenants hold the property in equal shares is rebuttable by clear and convincing evidence); *In re Kleinsmith*, 361 B.R. 504, 508 (Bankr. S.D. Iowa, 2006) (Considering Iowa law, the court finds that debtor's daughter's joint account is not liable for the debts of debtor to the credit union and, therefore, the credit union may not use set-off to reach the funds in the joint account.); *In re Davis*, 29 B.R. 652, 654 (Bankr. W.D.N.Y. 1983)(credit union's right of set-off against joint account is subject to party's right to rebut presumption that entire account is owned by party owing debt to credit union).

This Court acknowledges that none of the aforementioned decisions turned on the interpretation of a state statute dealing specifically with credit unions. However, these cases provide authority for the general proposition that a credit union's right of set-off against a multiple-party account is subject to a party to the account's right to establish ownership of the funds in the account.

15

C. <u>The Credit Union's contractual right of set-off is limited by state law.</u>

In addition to the remedies provided by statute, the Credit Union has contractual remedies against Debtor based on the documents signed by Debtor. Debtor signed four separate applications. On or about June 24, 1993, Debtor signed an application titled "Application - Multiple Name Share Deposit Account with Survivorship." The Application stated in very small print:

> The Aforementioned are hereby made parties to this share-deposit account and on proper withdrawal demand, the Credit Union will pay all sums due on account of payment on share-deposits and any accumulations or benefits addressed thereof, less any setoff allowed by law to any one or more of said parties. . .

The Application for the multiple-party account does provide the Credit Union with a right of set-off, although the set-off language in the Application appears to be limited to preventing a party from withdrawing funds if that party owes a debt to the Credit Union. Even if the Application provides a broad right of set-off, that right of set-off is allowed only to the extent "allowed by law." Since Michigan law provides that the Credit Union's right of set-off is subject to the parties' rights to establish ownership of the account, the language in the Application does not permit an automatic set-off of one hundred percent of the funds in the Survivorship Account.

Debtor also signed an Application for Membership on November 29, 1999. The Application for Membership does not appear to have any language with respect to the Credit Union's set-off rights.

In addition, Debtor signed an Application when he applied for a Classic Visa Card on November 19, 2000 and again when he applied for a Platinum Preferred Visa on September 30, 2005. The Visa application states "Your account is secured by all

16

shares you have in any individual or joint account." When Debtor became a member on November 29, 1999, he was assigned an account in which he unquestionably holds shares. However, it is unclear whether Debtor has any shares in the Survivorship Account opened by Kathryn Houston-Nedd. Debtor was not a member at the time the Survivorship Account was established and thus had no membership interest or "shares" in that account at that time. The Credit Union has not explained how the language in Debtor's Visa application would give it the right to apply funds in the Survivorship Account to satisfy a debt owed by Debtor. In the absence of any explanation, the Court finds that the Credit Union has no contractual right to set-off the funds in the Survivorship Account to satisfy an obligation owed by Debtor to the Credit Union.

While this Court's conclusion that the Credit Union's set-off rights are subject to the parties rights to establish ownership of a multiple-party account is based on a careful reading of the relevant statutes, there are also strong policy reasons supporting this Court's conclusions. By statute, creditors' rights to attach the funds in a joint bank account are subject to proof of ownership of the funds in the account. Mich. Comp. Laws 487.718.[5] *See also, Dandelion v. Lazoski*, 531 N.W.2d 799, 802 (Mich. Ct. App. 1995)(presumption that holders of joint accounts share equal ownership could be

---

[5]**487.718. Deposits; rights of creditors, claims against deceased owner's estate**

Sec. 8. Deposits in a statutory joint account shall be subject to the rights of creditors of the persons designated in the statutory joint account contract as owners of the funds to the extent of the ownership, ...

rebutted to show the actual interest in the funds held in the account); *Comerica Bank*, 506 N.W.2d 283 (Department of Treasury could levy upon the entire amount of account held jointly by a delinquent taxpayer and an innocent third party subject to third party's right to prove ownership of the account). While the instant case is of a slightly different nature than the bank cases, because the Credit Union itself is the creditor, this Court can discern no reason why a party to a multiple-party credit union account would not be entitled to the same protections as a joint owner of a joint bank account. There may be a context in which a credit union is entitled to special protections, but when the credit union is collecting on credit card debt, the credit union is a creditor and credit union members are entitled to the same protections as parties to a joint bank account. *See, Cullen*, 329 B.R. 52*; Kleinsmith*, 361 B.R. 504*; Davis*, 29 B.R. 652.

In this case, Debtor owes the Credit Union $42,087.67 on Visa cards issued to him by the Credit Union. The Credit Union has a lien on Debtor's member account and may set-off against the entire amount of that account, assuming that Debtor's member account (ending in 5228) is a single party account. With respect to the multiple-party account, the Credit Union is only entitled to an amount proportionate to the net contributions of the Debtor. Kathryn Houston-Nedd has affirmed in an affidavit that all of the funds in the account were her funds. The Credit Union until January 6, 2012 to file a responsive affidavit. If a responsive affidavit is filed, this Court will schedule an evidentiary hearing. If no such affidavit is filed, this Court will find that the amounts in the subject account are attributable entirely to the contributions made by Kathryn Houston-Nedd, and, thus, not subject to set-off by the Credit Union.

18

III.

CONCLUSION

In conclusion, this Court finds that the Credit Union's right to set-off the debt owed to it by Debtor against funds in the Survivorship Account is subject to the presumptions of ownership set forth in Mich. Comp. Laws § 490.53. The Credit Union has until January 6, 2012 to file an affidavit to rebut the affidavit of Kathryn Houston-Nedd as to the parties' net contributions to the Survivorship Account. If a responsive affidavit is filed, this Court will schedule an evidentiary hearing on this matter. If no such affidavit is filed, this Court will find that the amounts in the Survivorship Account are attributable entirely to the contributions made by Kathryn Houston-Nedd, and, thus, not subject to set-off by the Credit Union. Accordingly, this Court denies the Lake Trust Credit Union's Motion for Relief from Stay to Allow Set-off Pursuant to 11 U.S.C. § 553 subject to the Credit Union's Right to File an Affidavit Regarding the Parties' Net Contributions to the Survivorship Account.

Signed on December 21, 2011

                                           /s/ Marci B. McIvor
                                           Marci B. McIvor
                                           United States Bankruptcy Judge